IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CT-3238-FL

| | |
|---|---|
| JOHNNIE D. ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| REGGILLETTE ANDERSON,[1] HUBERT PERSON, DR. GEORGE SOLOMON, CAPTAIN COBB, MR. SAULS, MR. HOWELL, MICHAEL MILLS, DARLYN WHITE, WALTER PENUEL, OFFICER GAY, ROBERT VANDIFORD, CAPTAIN R. WATSON, SARGENT NOBLE, ALVIN KELLER, and DANNY SANFRIT, | ) ) ) ) ) ) ) ) ) ) ) ORDER |
| Defendants. | ) |

This matter is before the court on plaintiff's motion for default judgment (DE 144) and motion for reconsideration (DE 145). Defendants did not respond to the motions. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court denies the motions; however, to correct an error in the analysis in its prior order granting summary judgment, the court corrects and amends such order, as set forth herein. Thereupon, summary judgment shall be entered in favor of all defendants in this matter.

**BACKGROUND**

Plaintiff, a state inmate, initiated this 42 U.S.C. § 1983 suit pro se on September 30, 2013,

---

[1] According to defendant Reggillette Anderson's affidavit, her first name is actually "Reggielette." (App. (DE 128) Ex. 2, Roundtree Aff.). Also, defendant Reggillette Anderson's last name has reverted back to her maiden name, Roundtree, and defendants now refer to her as "Roundtree." (See Mem. Law (DE 129) at 2 n.2). At the time of the events in question, however, her name was "Anderson." For ease of reference and to avoid any confusion, the court will continue to refer to her as "Anderson."

alleging he was subject to excessive force and retaliation when he was an inmate at the Maury Correctional Institution ("Maury C.I."). The excessive force incidents purportedly occurred on March 31, 2010, April 6, 2010, April 21, 2010, and June 4, 2010. The defendants are correctional officers and other staff employed at Maury C.I. during the subject time period.

Defendants Gay and Person failed to request that the North Carolina Attorney General's office represent them in this matter, and did not otherwise file notices of appearance. The court, accordingly, entered default against them on June 5, 2015.

On September 18, 2017, the court granted the remaining defendants' motion for summary judgment, which disposed of all claims in this action except the ones asserted against defendants Gay and Person. In that same order, the court notified the parties, pursuant to Federal Rule of Civil Procedure 56(f)(1), that it intended to grant summary judgment in favor of nonmovants, defaulting defendants Gay and Person, for the same reasons summary judgment was entered for the moving parties, and provided the parties 14 days to show cause why summary judgment should not be granted in those defendants' favor.

In response to the court's order to show cause, plaintiff filed the instant "motion for default judgment." Plaintiff then filed the instant motion for reconsideration, arguing that the court erred in granting summary judgment to the non-defaulting defendants.

## DISCUSSION

A.   Motion for Default Judgment

The court construes plaintiff's motion for default judgment as a response to its order to show cause why summary judgment should not be granted as to defendants Person and Gay, pursuant to Federal Rule of Civil Procedure 56(f)(1). Summary judgment is appropriate when there exists no

genuine issue of material fact, and the court may award judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). Where the court has identified the basis for summary judgment as to defendants Person and Gay, pursuant to Rule 56(f)(1), plaintiff now "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

Plaintiff argues defendant Person is not entitled to summary judgment because he (1) "[p]articipated directly in the constitutional violations"; (2) "[f]ailed to remedy the wrong(s) after being informed through report, appeal[,] emergency grievance, and personally"; (3) "[w]as grossly negligent in supervising subordinates who committed the wrongful acts"; and (4) "exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." (See Mot. Default J. (DE 144) at 5). Plaintiff appears to allege that defendant Person is liable under a supervisory liability theory. But, as the court already has explained, (see Sept. 18, 2017, Order (DE 141) at 25), plaintiff failed to establish an underlying constitutional violation that would support a supervisory liability claim against any defendant. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

To the extent plaintiff alleges defendant Person "participated directly' in the excessive force incidents, plaintiff's own declarations and verified complaint demonstrate that defendant Person

3

never touched plaintiff, much less subjected him to excessive force.[2] (See Pl.'s First Decl. (DE 119-1); Pl.'s Second Decl. (DE 134-2); Am. Compl. (DE 16)). And plaintiff's retaliation claim against Person fails for the same reasons the court granted summary judgment on the claim in favor of the non-defaulting defendants: there is no evidence that defendants acted in retaliation because he attempted to exercise his constitutional rights. (Sept. 18, 2017, order (DE 141) at 24).

As to defendant Gay, plaintiff argues he is not entitled to summary judgment for three reasons: (1) based on his participation in the June 4, 2010, incident; (2) because Gay "confiscated [plaintiff's] property with no penalogical [sic] justification; and (3) because Gay "refused to allow [plaintiff to] attend the DCC hearing."[3] (Mot. Default J. (DE 144) at 5, 9). The court already has concluded that defendant Gay did not violate the Eighth Amendment during the June 4, 2010, incident. (See Sept. 18, 2017, order (DE 141) at 21-23). Plaintiff's due process and confiscation of property claims against Gay were not alleged in his amended complaint and thus are not part of this action.

Accordingly, the motion for default judgment is DENIED, and on the same basis, pursuant to Rule 54(f)(1), the court now grants summary judgment in favor of defendants Person and Gay.

B.     Motion for Reconsideration

Plaintiff moves for reconsideration of the court's September 18, 2017, order, pursuant to

---

[2]Plaintiff also alleges that defendant Person "was present to witness [the April 6, 2010,] excessive force [incident] and retaliation [and] did nothing to prevent it nor did he report it or repremand [sic] staff . . . ." (Mot. Default J. (DE 144) at 3). To the extent this allegation suggests defendant Person is liable under §1983 pursuant to a theory of bystander liability, the claim fails because the court already has determined the April 6, 2010, incident does not rise to the level of a constitutional violation. See Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002) (holding claim for bystander liability requires officer to observe a violation of the plaintiff's constitutional rights).

[3]Plaintiff's motion also suggests the court should not grant summary judgment in favor of defendant Gay for the same reasons plaintiff advanced as to defendant Person. (See Mot. Default J. (DE 144) at 5). With the exception of the June 4, 2010 incident, discussed above, plaintiff's arguments all fail for the same reasons discussed above in connection with defendant Person.

4

Federal Rule of Civil Procedure 59(e). Rule 59(e), however, is only applicable to motions to alter or amend a final judgment. Fed. R. Civ. P. 59(e); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1469–70 (4th Cir. 1991). Because the court's summary judgment order did not dispose of all the claims in this matter, and did not result in entry of final judgment, Rule 59(e) is inapplicable. Instead, motions for reconsideration of pre-judgment interlocutory orders should be evaluated under Federal Rule of Civil Procedure 54(b). Fayetteville Inv'rs, 936 F.2d at 1469-70.

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Compared to post-judgment Rule 59(e) motions, Rule 54(b) gives district courts "broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).

The discretion provided by Rule 54(b), however, "is not limitless." Id. The court may revise an interlocutory order only in the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice. Id.; see also Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003).

Plaintiff argues the court committed a clear error of law when it granted summary judgment to the non-defaulting defendants.[4] Although the motion is difficult to follow, plaintiff appears to

---

[4] Plaintiff also cites to various pieces of purportedly "newly discovered facts" in the motion, including that third-party witness Chineta Williams failed to attach copies of a use of force medical screening to her affidavit, altered certain documents produced during the internal investigations of the incidents, and failed to inform the court that the investigations did not comply with internal Department of Corrections protocols. (See Mot. Reconsideration (DE 145) at 8). But that evidence was all available to plaintiff at the time he drafted his response to defendants' motion for summary judgment, and so it is not "newly discovered" evidence. Carlson, 856 F.3d at 325. Moreover, the evidence

5

make the following arguments: (1) the court failed to consider defendants' pattern of disobeying orders and provoking and instigating plaintiff; (2) the court failed to account for the lack of video recordings of the incidents, and failed to draw inferences in his favor based on defendants' failure to produce the videos; and (3) the court did not consider plaintiff's evidence showing that he reported to prison officials that he was assaulted and retaliated against, and that he feared for his safety, but defendants failed to address his concerns. (See Mot. Reconsideration (DE 145) at 1-4).

None of these arguments warrant reconsideration of the summary judgment order. Even assuming defendants "provoked" or "instigated" plaintiff, the court would not change its analysis of the excessive force and retaliation claims. Plaintiff, for example, argues that he was "provoked" into throwing milk on defendant Anderson because she called him a snitch, and that the April 6, 2010, incident was "provoked" because defendant Gay confiscated his property for no reason. (See Mot. Reconsideration (DE 145) at 2-3). But the question in excessive force cases is whether there was a need for force based on the prisoner's behavior, not whether the prisoner felt "provoked" by the officers' conduct into misbehaving. See Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Moreover, none of the alleged provocations justify plaintiff assaulting the officers; as plaintiff is aware, the appropriate procedure when he feels "provoked" by officers is to file an administrative grievance. As the court set forth in the September 18, 2017, order, plaintiff's behavior in each incident justified the use of force. (See Sept. 18, 2017, order (DE 141) at 18-23).

Plaintiff's next argument is that the September 18, 2017, order did not address defendants' failure to retain and/or produce video recordings of the March 31, 2010 and April 6, 2010, incidents, or their failure to produce video recordings from different angles for the April 21, 2010 and June 4,

---

would not change the court's analysis of plaintiff's excessive force or retaliation claims.

2010, incidents.[5] Defendants state that no video recording exists for the March 31, 2010, incident because it occurred off camera, but do not explain the absence of a video recording for the April 6, 2010, incident, or the absence of recordings from different angles for the other incidents. (See App. (DE 128) Ex. 3, Williams Aff. ¶ 21).

The court assumes plaintiff's argument is that the court committed a clear error of law by failing to impose sanctions based on spoliation of evidence. See Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590, 593-94 (4th Cir. 2001). Spoliation of evidence is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Id. at 590. The court "must find some degree of fault" to impose sanctions for spoliation. Id. Upon finding spoliation of evidence has occurred, the court may impose a variety of sanctions, including dismissal, preclusion of evidence, or imposition of an adverse inference. Id at 593-94; Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 506 (D. Md. 2009).

Plaintiff has not produced sufficient evidence to warrant a finding of spoliation of evidence. Plaintiff assumes that because defendants did not retain the videos, they must have done so (1) at a time when this litigation was pending or reasonably foreseeable and (2) with a culpable state of mind. But plaintiff has pointed to no evidence suggesting defendants intentionally or recklessly failed to preserve the videos at a time when this litigation was reasonably foreseeable, and the absence of the videos standing alone cannot support such a finding. See Silvestri, 271 F.3d at 590. Thus, the court did not commit a clear error of law by failing to sanction defendants for not producing the videos.

---

[5] Defendants produced video recordings for the April 21, 2010 and June 4, 2010, incidents, but plaintiff claims there are additional recordings that show those incidents from different angles.

Moreover, with the exception of the June 4, 2010, incident, discussed below, the court accepted plaintiff's version of the facts and drew all justifiable inferences in his favor when ruling on the motion for summary judgment. (Sept. 18, 2017, order (DE 141) at 15; see also id. at 18-24 (adopting plaintiff's version of the facts for purposes of analyzing plaintiff's excessive force and retaliation claims)). Because the court accepted plaintiff's version of the facts as true, the absence of the video recordings for the first three incidents did not prejudice plaintiff. See Silvestri, 271 F.3d at 593 (noting sanctions for destruction of evidence are only appropriate where opposing party was prejudiced).

As to the June 4, 2010, incident, the court credited the portion of the video demonstrating that defendant Gay was in some distress before defendant Penuel struck plaintiff with the baton. (See Sept. 18, 2017, order (DE 141) at 22). Although plaintiff denies that he grabbed defendant Gay or otherwise posed a threat to him, plaintiff admits that he "eased" his arm out of the trap door so Gay would be required to call the supervising sergeant. (Pl.'s First Decl. (DE 119-1) at 8). Plaintiff further testified that he resisted officers' attempts to force his arm back in the cell, that his hand was closed in a fist, and that he refused defendant Gay's efforts to pry his fingers open. (See id.) Even accepting plaintiff's account as true and discounting the video evidence, the officer's use of force remains reasonable: plaintiff was actively resisting defendants' attempts to place his arm back in the cell, and the officers reasonably feared plaintiff was concealing a weapon in his closed fist. Striking plaintiff with the baton nine times[6] – while plaintiff continued to keep his arm out of the cell with his hand closed – was a good faith effort to maintain and restore discipline. See Whitley, 475 U.S. at 320. Accordingly, spoliation sanctions are not appropriate because the court's analysis would not

---

[6]Notably, the video that was produced clearly shows plaintiff was struck with the baton only twice, at most. (Recording, June 4, 2010, Incident (DE 131)).

have changed even assuming plaintiff did not grab defendant Gay at the beginning of the incident. See Silvestri, 271 F.3d at 593.

In sum, defendants are entitled to summary judgment even accepting plaintiff's version of the events as true and drawing all justifiable inferences in his favor. (Sept. 18, 2017, order (DE 141) at 18-25). The absence of the video recordings standing alone does not establish spoliation of evidence, and even assuming it did, the plaintiff has not been prejudiced by the failure to produce the videos. See Silvestri, 271 F.3d at 590, 593-94.

Plaintiff's final argument is the court did not consider plaintiff's evidence showing that he reported to prison officials that he was assaulted and retaliated against and that he feared for his safety, but defendants failed to address his concerns. (See Mot. Reconsideration (DE 145) at 4). Plaintiff does not have a constitutional right to or due process interest in a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thus, the court did not commit a clear error of law by failing to consider this evidence.

C. Correction to September 18, 2017, Order

As noted, an interlocutory order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a [final] judgment . . . ." Fed. R. Civ. P. 54(b). Because the court's September 18, 2017, order did not result in a final judgment as to all the parties, the court may, pursuant to Rule 54(b), revise that order to correct a clear error of law. See id.; Carlson, 856 F.3d at 325.

In the September 18, 2017, order, the court stated:

> [I]t is undisputed that following the incident on April 6, 2010, plaintiff was successfully screened and determined to have no evidence of trauma or injuries. (App. Ex. 3, Williams Aff., Ex. D). Accordingly, in light of the medical evidence from the April 6, 2010, incident of alleged excessive force, plaintiff has failed to

9

demonstrate a genuine issue of material fact regarding whether defendants used a 'nontrivial' amount of force.

(Sept. 18, 2017, order (DE 141) at 21). Because the absence of injury standing alone is not dispositive of whether an officer used excessive force in violation of the Eighth Amendment, see Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010), the court erred by giving dispositive weight to the lack of injury when it examined plaintiff's April 6, 2010, excessive force claim. Thus, the court corrects and modifies section B.2.a.ii of the court's September 18, 2017, order (DE 141 at 20-21) as set forth below:

    1.       April 6, 2010, incident[7]

On April 6, 2010, plaintiff was at a sick call appointment when he observed defendant Gay in the hallway pushing a cart containing plaintiff's personal property. (Pl.'s Second Decl. (DE 134-2) at 5). Plaintiff completed his medical appointment and defendant Penuel escorted him back to his cell. (Id.) During that escort, plaintiff was "fully restrained with cuffs behind the back, black box, waist chain and shackles on his feet . . . ." (Id.) Plaintiff saw an unnamed prison official in the main hall and asked about his emergency grievance. (See Pl.'s First Decl. (DE 119-1) at 2). The prison official told plaintiff that he needed to calm down. (Id.)

About that time, defendant Mills was also in the hallway, at least 15 or 20 feet away, and he stated plaintiff "had to have did [sic] somthing [sic] because [defendant] Gay wouldn't have [taken plaintiff's property] for no reason[,]" and that the property would be held for 72 hours. (Pl.'s Second Decl. (DE 134-2) at 5). Plaintiff stated, "that some bull****" and he "took a step forward." (Id.) Defendant Penuel then "slammed/wrestled [plaintiff] down to the ground, whereupon

---

[7]This section includes facts from plaintiff's second declaration (DE 134-2), which contains a more complete description of the April 6, 2010, incident than plaintiff's first declaration (DE 119-1).

10

defendant [Penuel] first attempted to use a thumb lock on [plaintiff] and [then plaintiff] was lifted of [*sic*] of the ground hand on my neck squeezing a nurve [*sic*] in it and chocking [*sic*] me." (Id.) Plaintiff also testified that "[a]t least (5) five officers were ruffing me up and standing around when I was dragged/carried back before [physician assistant] Leggett [who] assessed/screened me for injury." (Id. at 6).

Plaintiff complained of back pain, but physician assistant Leggett found "inmate is without injury." (Pl.'s Ex. 1-K (DE 136-2) at 14). Additionally, the nurse examined plaintiff's back and stated, "no redness or abnormality noted." (Id.) In his declaration, however, plaintiff stated that the "pain in his lower back became intolerable and [his] mobility [became] strikened [*sic*]" as a result of the April 6, 2010, incident. (Pl.'s Second Decl. (DE 134-2) at 7).

Turning to the factors under Whitley, 475 U.S. at 320-21, the need for force was apparent because plaintiff was outside his cell, yelled "that's some bull****," an expletive, at defendant Mills, and took a step toward him. (Pl.'s Second Decl. (DE 134-2) at 5). Moreover, plaintiff admits that he has a history of assaulting officers, including by throwing milk and other items on them. (Id. at 2-3). Although plaintiff was fully restrained, he also admits that he continued resisting officers' efforts to subdue him. (See id. at 5 (stating defendant Penuel "attempted to use a thumb lock on me")).

The third and fourth Whitley factors also weigh in favor of defendants. Given plaintiff's prior assaultive behavior, the fact that he was outside his cell, his loud cursing at another officer, and his step toward that officer, the officers reasonably perceived that plaintiff was an imminent threat to them. Plaintiff emphasizes that he was "fully restrained," but he had sufficient mobility to walk without assistance through the hallway. (See id.) Plaintiff also states that defendants initially

11

attempted to subdue him with a "thumb lock" before lifting him off the ground and choking him, which suggests the officers attempted to temper the severity of the force employed. (Id.).[8]

The second Whitley factor weighs somewhat in favor of plaintiff. Plaintiff was in full restraints when he stepped toward officer Mills, and defendants reacted by slamming/wrestling him to the ground, and (after attempting an unsuccessful "thumb lock") restraining him by lifting him off the ground and choking him. (Id.) As noted, however, the second hold where plaintiff was lifted off the ground and choked only occurred after plaintiff failed to submit to the thumb lock. (See id.) Nevertheless, considering the second Whitley factor, the amount of force used in these circumstances was not reasonably related to the need for force.

Upon consideration of all the Whitley factors, in light of plaintiff's history of assaultive behavior, his step towards the officer he was shouting profanities at, and his continued resistance to defendants' attempts to subdue him, there is no genuine issue of material fact that defendants' use of force was a good faith effort to maintain or restore discipline. See Whitley, 475 U.S. at 320. Notably, under plaintiff's own version of the facts, this is not a case where corrections officers assaulted an inmate who was compliant and did not pose any threat to the officers. Cf. Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (explaining use of force is excessive where it is "totally without penological justification"); Thompson v. Commonwealth of Va., 878 F.3d 89, 102–03 (4th Cir. 2017) (noting officers violate the Eighth Amendment when they use force "when inmates have not engaged in wrongdoing, are restrained and compliant and posing no physical threat"); Iko v. Shreve,

---

[8] In addition, although not determinative, the court notes that a lack of documented injury in plaintiff's medical records weighs in defendants' favor. See Wilkins, 559 U.S. at 37 ("The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.") (internal quotations omitted). Here, two medical professionals evaluated plaintiff and documented that he was "without injury" following the use of force. (See Pl.'s Ex. 1-K (DE 136-2) at 14).

535 F.3d 225, 239-40 (4th Cir. 2008) (holding excessive force claim viable where officers continued deploying pepper spray after plaintiff had clearly stopped resisting). Accordingly, based on the totality of the circumstances, the court concludes that the April 6, 2010, incident does not amount to an Eight Amendment excessive force violation.

D. Summary Judgment

In sum, in accordance with the analysis in the court's September 18, 2017, order, as corrected and modified herein, replacing section B.2.a.ii of the September 18, 2017, order with section C.1. of this order, the court determines that there is no genuine issue of fact and defendants are entitled to judgment as a matter of law. Accordingly, the court grants summary judgment in favor of all defendants.

## CONCLUSION

For the foregoing reasons, plaintiff's motions for default judgment (DE 144) and reconsideration (DE 145) are DENIED. The court CORRECTS and AMENDS its September 18, 2017, order (DE 141), as set forth herein, by replacing section B.2.a.ii of the September 18, 2017, order with section C.1 of this order. Upon the court's September 18, 2017, order, as so corrected and amended, and the instant order, the court GRANTS summary judgment in favor of all defendants. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 29th day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge